[Cite as *Wendt v. Dickerson*, 2018-Ohio-1034.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| CHRISTOPHER WENDT, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiffs-Appellants | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017 AP 08 0024 |
| JUDITH DICKERSON, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2012 CV 02 0135

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 19, 2018

APPEARANCES:

| For Plaintiffs-Appellants | For Defendants-Appellees |
| --- | --- |
| DAVID BUTZ | STEVEN ANDERSON |
| 4775 Munson Street N.W. | 140 Fair Avenue N.W. |
| Box 36963 | Box 1014 |
| Canton, OH 44735 | New Philadelphia, OH 44663 |

*Gwin, P.J.*

{¶1} Appellants appeal the June 2, 2017 and July 14, 2017 judgment entries of the Tuscarawas County Court of Common Pleas.

### *Facts & Procedural History*

{¶2} In 1928, John R. Dickerson obtained full ownership interest in approximately 82 acres of real property located in Section 20 of Cadiz Township, in Harrison County. Approximately four years later, John R. Dickerson transferred one-half of the property to his wife, Marjorie I. Dickerson. John and Marjorie Dickerson divorced prior to the transfer. On December 17, 1952, John and Marjorie Dickerson jointly transferred their interest in the property to the Pittsburgh Consolidated Coal Company via a warranty deed; however John and Marjorie each retained a one-half interest in all of the oil and gas and the rights to drill and/or explore said oil and gas associated with the property. John and Marjorie transferred the rights to the property's surface, coal, and all other non-oil and gas minerals. Pursuant to the 1952 transaction, the mineral rights were severed from the surface estate.

{¶3} John Dickerson passed away on September 7, 1976. His mineral rights to the property were not included in his estate. Marjorie Dickerson passed away on August 24, 1994. Her estate was not probated at the time of her death. The sole heirs of John and Marjorie Dickerson are: Judith Dickerson, Mary Louise Foster, Elaine Harris, Claire Dickerson, Richard Dickerson, Robert Dickerson, Raymond Dickerson, Constance Clark, Deborah Snelson, Misty Engstrom, Ronald Dickerson, John Dickerson, and Wanda Dickerson ("the Dickersons").

**{¶4}** Pittsburgh Consolidated Coal strip-mined and reclaimed the property. In 1997, Pittsburgh Consolidated Coal sold the property to Neil Porter via a limited warranty deed. In 2006, Neil Porter sold the property to plaintiffs-appellants Christopher and Veronica Wendt ("the Wendts") via a survivorship deed. The deed to the property was recorded on April 21, 2006. The deed was subject to the reservation by, "John R. Dickerson and Marjorie I. Dickerson, their heirs and assigns for all of the oil and gas with the right to drill for in Warranty Deed filed for record December 17, 1952 in Volume 133, page 69, Deed Records."

**{¶5}** From 1952 to 2011, the Dickersons took no action related to their mineral rights to the property. In 2011, the Dickersons gave John L. Dickerson a power of attorney to deal with the inherited mineral rights on behalf of all the Dickerson heirs. On February 28, 2011, the Dickersons recorded two documents with the Harrison County Recorder's Office, each entitled, "Affidavit for Transfer of Real Estate Inherited." Each of the affidavits stated the purpose of the affidavit was to obtain a transfer of the above-described premises to the heirs at law of Marjorie/John Dickerson and lists the names, addresses, and portions inherited by each heir. Each affidavit states it transfers, by inheritance, the "undivided one-half interest in all oil and gas contained in and underlying the hereinafter described premises, together with the right to drill for, operate, produce, and market the same." In May of 2011, the Dickersons signed a lease with Chesapeake Exploration LLC for the mineral rights to the property. Chesapeake recorded the lease on November 2, 2011.

**{¶6}** During 2011, the Wendts also sought to lease their mineral rights to the property. The Wendts signed a mineral lease with Chesapeake in the spring of 2011. The lease failed because of the Dickersons' potential interest in the mineral rights.

**{¶7}** On October 11, 2011, the Wendts published a notification of abandonment in the Steubenville Herald-Star newspaper. On October 21, 2011, the Wendts recorded an affidavit of abandonment with the Harrison County Recorder's Office. The affidavit asserted the Wendts owned all the oil and gas rights by the automatic operation of R.C. 5301.56 and stated the "mineral interest previously owned by holders John and Marjorie Dickerson were deemed abandoned pursuant to O.R.C. 5301.56(B) from 1989 to 2006 and vested in the owner of the surface as of March 22, 1992." The Wendts executed a second lease with Chesapeake on October 31, 2011, but the lease was terminated due to the conflict in the mineral rights.

**{¶8}** On December 9, 2011, the Dickersons recorded two claims to preserve mineral interest regarding any mineral interests inherited from Marjorie and John Dickerson with the Harrison County Recorder's Office.

**{¶9}** On February 9, 2012, the Wendts filed a complaint against the Dickersons and Chesapeake Exploration LLC in the Tuscarawas County Court of Common Pleas. The complaint brought nine causes of action: declaratory judgment, quiet title, injunction, slander of title, unjust enrichment/quantum meruit, trespass, negligence/negligence per se, potential interference with business relationship, and constructive trust. The Wendts requested the trial court rule they were the lawful owners of the mineral rights. The Wendts argued that, pursuant to the 1989 version of the Dormant Mineral Act, the mineral rights merged with the surface estate no later than March 22, 1992. The Dickersons filed

a counterclaim alleging slander of title and intentional interference with business relationships.

{¶10} The Wendts and Dickersons filed competing motions for summary judgment in December of 2012. The Wendts dismissed Chesapeake as a party defendant on January 8, 2013. The trial court granted the Wendts' motion for summary judgment as it pertained to their claim for declaratory judgment, quiet tile, and injunction. The trial court found the 1989 version of the Ohio Dormant Mineral Act ("ODMA") applied and, as such, the mineral rights merged with the surface estate on March 22, 1992. The Wendts were therefore the owners of the mineral rights underlying the surface estate. The trial court found there were genuine issues of material fact as to the Wendts' remaining claims.

{¶11} The trial court held a bench trial on the parties' remaining claims. The Wendts dismissed their claims for unjust enrichment and negligence. On January 15, 2014, the trial court issued its judgment entry that found the Wendts and Dickersons were not entitled to judgment on their remaining claims.

{¶12} The Dickersons appealed to this Court and raised two assignments of error. They argued that the trial court erred by finding the 1989 version of the ODMA applied to this case and erred in finding the 1989 ODMA was constitutionally applied. In *Wendt v. Dickerson*, 5th Dist. Tuscarawas No. 2014 AP 01 0003, 2014-Ohio-4615, this Court found the trial court correctly determined the 1989 version of the ODMA applied, the mineral rights automatically vested with the surface owners on March 22, 1992, and that the trial court did not err when it found the 1989 ODMA was constitutionally applied to the Dickersons.

{¶13} The Dickersons appealed this Court's decision to the Ohio Supreme Court and asserted three propositions of law: (1) the 2006 version of the ODMA controls the vesting of title in a surface owner who did not make a claim for the mineral interests before the 2006 enactment; (2) the 1989 version of the ODMA did not provide mineral owners with the due process of law required under the state and federal constitution; and (3) the ODMA is not now and never was self-executing. The Ohio Supreme Court accepted the appeal, but held the case pending the resolution of several other cases already accepted by the Supreme Court.

{¶14} On September 15, 2016, the Ohio Supreme Court reversed this Court's opinion on the authority of *Corban v. Chesapeake Exploration, LLC*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.2d 1089 and *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427.

{¶15} Once the case was returned to the trial court, the trial court granted the Wendts' leave to file a motion for summary judgment relative to constitutional issues. Accordingly, both the Wendts and Dickersons filed motions for summary judgment and responses.

{¶16} The trial court issued a judgment entry on June 2, 2017. The trial court found that, in *Corban*, the Ohio Supreme Court concluded the 2006 version of the ODMA applies to all claims asserted after June 30, 2006 and that the Wendts did not assert their ODMA claims against the Dickersons until after June 30, 2006. Thus, pursuant to *Corban*, the 2006 version of the ODMA applies in this case. Further, that, pursuant to the majority opinion in *Corban*, the General Assembly modified only the method and procedure by which the right is recognized and protected and no vested, substantive right is altered.

Accordingly, the Wendts' alleged property rights, including a cause of action, are not vested property rights. The trial court found the application of the 2006 ODMA to the Wendts in this case does not constitute the deprivation of the Wendts' property and is constitutional. The trial court overruled the Wendts' motion for summary judgment.

{¶17} The trial court issued a second judgment entry on July 14, 2017 on counts one, two, and three. The only issue the trial court addressed in this judgment entry was whether the Wendts could establish a claim to mineral rights under the 2006 ODMA. The trial court first found the Wendts' claim fails under the 2006 ODMA because the mineral rights they sought were not legally "dormant" as provided in the 2006 ODMA because they were subject to a "savings event" of R.C. 5301.56(B)(3) during the preceding twenty years, the two affidavits recorded on February 28, 2011 for the transfer of real estate inherited.

{¶18} The trial court next found the Wendts' claims fail under the 2006 ODMA because they did not comply with the notice requirement of the 2006 ODMA as there is no evidence in the record the Wendts ever attempted certified mail service or completed certified mail service before they served the Dickersons by publication.

{¶19} Finally, the trial court found the Wendts' claims fail in light of the Ohio Supreme Court's case of *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, which held that a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interest from being deemed abandoned if filed within sixty days after the notice of the surface owner's intent to declare those interests abandoned. The trial court noted that on October 21, 2011, the Wendts recorded an affidavit of abandonment with the Harrison County Recorder's Office and, on

October 11, 2011, published a notification of abandonment in the Steubenville Herald-Star newspaper. Further, on December 9, 2011, the Dickersons recorded two claims to preserve mineral interests and thus, the Dickersons properly preserved their mineral rights. The trial court concluded the Wendts had no legal right to invoke the relief sought in Counts one, two, and three under the 2006 ODMA. The trial court denied the Wendts' motion for summary judgment, granted the Dickersons' motion for summary judgment, and found the legal title to the mineral rights at issue quieted in favor of the Dickersons.

{¶20} The Wendts filed an appeal of the June 2 and July 14, 2017 judgment entries of the Tuscarawas County Court of Common Pleas and assign the following as error:

{¶21} "I. THE TRIAL COURT ERRED WHEN IT HELD THAT THE RIGHTS CONFERRED BY R.C. 5301.56 (IN EFFECT PRIOR TO JUNE 30, 2006) WERE NOT PROPERTY RIGHTS PROTECTED BY THE UNITED STATES CONSTITUTION.

{¶22} "II. THE TRIAL COURT ERRED WHEN IT HELD THAT THE SEVERED MINERAL INTEREST AT ISSUE WAS NOT SUBJECT TO JUDICIAL ABANDONMENT UNDER R.C. 5301.56(B) (IN EFFECT JUNE 30, 2006)."

*Summary Judgment Standard*

{¶23} Civil Rule 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or

stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶24}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶25}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶26} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I.

{¶27} In their first assignment of error, the Wendts contend the trial court erred when it held the rights conferred by the 1989 version of the ODMA were not property rights protected by the United States Constitution. Specifically, the Wendts argue they are entitled to have the 1989 ODMA conclusive presumption applied to the reservation confirmed in this litigation because this conclusive presumption and related accrued cause of action are property rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, which cannot be taken without due process and constitute a taking. We disagree with appellants.

{¶28} First, a majority of the justices in the *Corban* case did not utilize the "conclusive presumption" analysis in their decision. 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089. While the three justices joining in the majority opinion opined that, "by providing a conclusive presumption that the mineral interest had been abandoned in favor of the surface owner if the holder failed to take timely action to preserve it, the legislature

provided an effective method of terminating abandoned mineral rights through a quiet title action" in the 1989 ODMA, a fourth justice concurred in judgment only.  *Id.*  Further, a fifth justice concurred the 1989 ODMA was not self-executing, the severed mineral interest cannot revert to the surface owner absent judicial action, and agreed the 2006 version of the ODMA applied to all claims asserted after June 30, 2006, but wrote separately to note her analysis that the 1989 ODMA was ambiguous regarding what was required for a severed mineral interest to be abandoned.  *Id.*

{¶29}  Second, even if the Ohio Supreme Court did find the 1989 ODMA created a conclusive presumption, pursuant to the majority's rationale in *Corban*, the General Assembly did not divest a surface holder of a right to abandoned minerals accrued prior to June 30, 2006.  *Id.*  The majority in *Corban* found the 1989 ODMA was not self-executing and did not automatically transfer ownership of dormant mineral rights by operation of law because a surface holder was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned, and, at most, the 1989 ODMA created an evidentiary presumption applied in a quiet title action that these rights would vest if certain conditions were not proven by the mineral owner in a quiet title action.  *Id.*  Thus, surface holders lost no property right when the ODMA was amended, as under the 2006 ODMA they were not deprived of the right to bring a cause of action for abandonment through a quiet title or declaratory judgment action.  *Id.*  Rather, what changed was the procedural process, including statutory notice and recording procedures, by which mineral rights are deemed abandoned and vested in the surface holder.  *Id* ("The General Assembly has not divested the surface holder of a right to abandoned mineral interests that accrued prior to the effective date of H.B. 288, but,

rather, it modified only the method and procedure by which the right is recognized and protected").

**{¶30}** The majority further stated, "as this court has recognized, evidentiary rules (such as the conclusive presumption established by the 1989 law) are procedural in nature, and therefore, changing them does not alter a vested substantive right." *Id.* As explained by the majority in *Corban*, the Wendts lost, at most, the benefit of a procedural evidentiary presumption, which does not implicate substantive due process concerns. *Id.* While the Wendts and the dissent in *Corban* disagree with this characterization and contend the 1989 ODMA created vested rights in certain property owners that cannot be taken away without running afoul of the U.S. Constitution, we, as an appellate court, are bound to follow the law and decisions of the Ohio Supreme Court, unless or until they are reversed or overruled. *State v. Lenior*, 5th Dist. Delaware No. 10CAA010011, 2010-Ohio-4910; *Phillips v. Phillips*, 5th Dist. Stark No. 2014CA00090, 2014-Ohio-5439. The *Corban* decision has not been reversed or overruled and the Wendts did not attempt to appeal the Ohio Supreme Court's decision in *Corban* to the United States Supreme Court. Accordingly, we are bound by the *Corban* decision.

**{¶31}** Further, the Ohio Supreme Court also reversed and remanded this case on the authority of its decision in *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.2d 427, and we are also bound by this decision. In *Walker*, the Ohio Supreme Court reiterated its ruling from *Corban* and found the issue of whether the 1989 or 2006 ODMA applies "is resolved by *Corban*" as *Corban* held the 2006 version of the ODMA applies to all claims after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006

amendments. *Id.* Further, that since there was no record of action being taken by the appellant or his predecessor prior to the effective date of the 2006 amendment to have the mineral rights deemed abandoned under the 1989 version of the ODMA, pursuant to *Corban*, the 2006 version of the act applies. *Id.*

{¶32} Walker filed a petition for a writ of certiorari with the Supreme Court of the United States. In his petition, Walker made the arguments advanced by the Wendts in this case. Walker argued the dormant mineral interest was abandoned and had vested in him on March 22, 1992, pursuant to the 1989 ODMA; that the 1989 ODMA was self-executing; and that the application of the 2006 ODMA to an already abandoned and vested dormant mineral interest was a violation of the due process clause of the federal constitution. In *Walker v. Shondrick-Nau*, 137 S.Ct. 824, 196 L.Ed.2d 601 (2017), the United States Supreme Court denied Walker's petition for certiorari. Thus, *Walker* remains the law in Ohio as it has not been reversed or overruled. In this case, the Wendts' claims were not asserted until 2011. Pursuant to *Corban* and *Walker*, the trial court did not err in finding the 2006 ODMA applies to this case and in determining the application of the 2006 ODMA against the Wendts does not violate the Due Process Clause of the U.S. Constitution.

{¶33} Additionally, in this case, even if the 1989 ODMA did confer upon the Wendts a substantive right in a conclusive evidentiary presumption, the Wendts due process rights were not violated because their property rights never vested. The Ohio Supreme Court has held that a right which is not absolute, "but is dependent for its existence upon the action or inaction of another is not basic or vested, and deprivation thereof does not constitute a deprivation of property" and if there is no deprivation of a

vested property right, it is not necessary to discuss the question of due process. *Hatch v. Tipton*, 131 Ohio St. 364, 2 N.E.2d 875 (1936). In this case, any property rights the Wendts had never vested, as their action in common pleas court was not filed prior to the effective date of the 2006 ODMA on June 30, 2006, but instead was filed in 2012. Thus, the Wendts' due process rights were not violated because they had, at most, a contingent right that never vested.

{¶34} The Wendts also argue their Fifth Amendment rights were violated as a taking occurred regarding their property rights when the ODMA was amended in 2006. We disagree. First, there was no federal or state taking when the 2006 ODMA went into effect, as the Ohio Supreme Court held in *Corban* that the 1989 ODMA did not operate automatically and was not self-executing; "rather, a surface owner seeking to merge those rights with the surface estate under the 1989 law was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned." *Corban v. Chesapeake Exploration, LLC*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.2d 1089; *Darrah v. Baumberger*, 7th Dist. Monroe No. 15 MO 0002, 2017-Ohio-8025 (denying appellees' argument that vested property rights were created in property owners via the 1989 version of the ODMA and denying the argument that taking those vested rights away constitutes an unconstitutional taking based upon the binding decision of the Ohio Supreme Court in *Corban*). Since the Wendts did not commence their suit in common pleas court prior to the effective date of the amended ODMA on June 30, 2006, they never owned any mineral or substantive rights.

{¶35} Further, though some courts have concluded that a cause of action is property within the meaning of the Takings Clause, the Ohio Supreme Court has held a

statute that is not destructive of vested property rights and merely modifies a remedial right is constitutional and does not violate the Takings Clause. *Hatch v. Tipton*, 131 Ohio St. 364, 2 N.E.2d 875 (1936); see also *Greyhound Food Mgmt. Inc. v. City of Dayton*, 852 F.Supp.2d 866 (6th Cir. 1988) (stating the "Ohio Supreme Court has long held that the constitution bans the passage only of retroactive substantive laws, but not of retroactive remedial laws"). As the Ohio Supreme Court held in *Corban*, the General Assembly modified only the method and procedure by which the right is recognized and protected. *Corban v. Chesapeake Exploration, LLC*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.2d 1089. Accordingly, the 2006 ODMA merely modifies a remedial right and does not violate the Takings Clause.

**{¶36}** Finally, the U.S. Supreme Court has held, "where courts merely clarify and elaborate property entitlements that were previously unclear, they cannot be said to have taken an established property right." *Stop the Beach Renourishment, Inc. v. Florida Dept. of Env. Protection*, 560 U.S. 702 (2010). "The Takings Clause only protects property rights as they are established under state law, not as they might have been established or ought to have been established." *Id.* In this case, the Ohio Supreme Court clarified the rights under the ODMA in *Corban*.

**{¶37}** Based on the foregoing, we find the trial court did not err in holding the 2006 version of the ODMA applies in this case; in finding the rights conferred by the 1989 version of the ODMA were not vested property rights protected by the United States Constitution; and in finding the application of the 2006 ODMA to the Wendts in this case does not constitute the deprivation of the Wendts property or due process and is constitutional. The Wendts' first assignment of error is overruled.

II.

{¶38} In their second assignment of error, the Wendts contend the trial court erred when it held the severed mineral interest at issue was not subject to judicial abandonment under the 2006 version of the ODMA. The Wendts argue since they filed an affidavit of abandonment, they served the notice, and because there was a lack of preserving event in the twenty (20) years before the notice, they are entitled to quiet title relief under the 2006 version of the ODMA.

{¶39} The parties dispute whether the Wendts fully complied with the 2006 ODMA notice procedures and whether the affidavits for transfer of real estate inherited filed in 2011 qualify as a savings event under R.C. 5301.56(B)(3)(a). The Dickersons argue that the Wendts' notice of abandonment should not have been served by publication or without explaining why service could not have been made by certified mail. The Wendts contend since the Dickersons admit to receiving actual notice of the filing of the notice of abandonment, any service error they made was harmless. The Dickersons contend the affidavits for transfer of real estate inherited were filed eight months prior to the notice of abandonment and they constitute a "title transaction" under R.C. 5301.47(F) and thus qualify as a "savings event" under R.C. 5301.56(B)(3)(a). The Wendts argue the affidavits of real estate inherited were not valid title transactions because they incorrectly describe the next-of-kin. However, we find neither of these issues to be dispositive in this case.

{¶40} Even if the Wendts fully complied with the 2006 ODMA notice requirements and even if the affidavits of real estate inherited do not qualify as a savings event under R.C. 5301.56(B)(3)(a), the Wendts' second assignment of error fails in light of several

rulings from the Ohio Supreme Court, as the Dickersons timely filed claims to preserve in accordance with R.C. 5301.56(H)(1)(a).

**{¶41}** The Wendts do not dispute the Dickersons timely recorded two Claims to Preserve Mineral Interests with the Harrison County Recorder in response to their notice; they instead argue that they may seek judicial confirmation of the conclusive presumption of abandonment, regardless of the filing of the claims to preserve, as there was no preserving event in the twenty (20) years prior to their serving of the notice. We find this argument fails pursuant to the rulings from the Ohio Supreme Court in *Dodd v. Croskey*, *Walker v. Shondrick-Nau*, and *Farnsworth v. Burkhart.*

**{¶42}** In *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, the Ohio Supreme Court resolved the "question of whether a mineral-interest holder's claim to preserve a mineral interest from being deemed abandoned in accordance with R.C. 5301.56(H)(1)(a) is sufficient to preserve that interest if the claim was filed after notice of the surface owner's intent to declare the mineral interest abandoned and outside the 20-year window immediately preceding that notice" and addressed the "effect of a claim to preserve filed under R.C. 5301.56(H) in the absence of an affidavit describing the occurrence of one of the saving events described in subsections (B)(3)(a) through (f)."

**{¶43}** Like the Wendts in this case, the appellants in *Dodd* argued that, in order to preclude abandonment, the 2006 ODMA requires evidence that a savings event occurred in the 20-year window prior to the surface owner's notice of intent to declare mineral interests abandoned and thus a mineral interest holder's claim to preserve that is filed after the surface owner's notice does not preclude the mineral rights from being deemed abandoned if no saving event occurred within the preceding twenty years. *Id.* The

Supreme Court reiterated that there are two ways for a mineral interest holder to assert that a mineral interest has not been abandoned after the surface owner files the notice of abandonment: (1) the holder of the mineral interest can file a claim to preserve in accordance with R.C. 5301.56(H)(1)(a) or (2) the holder can file an affidavit that describes a savings event that occurred in the 20 years preceding the notice. *Id.*

{¶44} The Ohio Supreme Court stated, "nothing in the act states that a claim to preserve filed under R.C. 5301.56(H)(1)(a) must refer to a saving event" that occurred within the preceding 20 years. *Id.* Further, "nor do the notice procedures" in R.C. 5301.56(H)(1)(a) require that the claim to preserve be itself filed in the 20 years preceding notice by the surface owner. *Id.* The Supreme Court held, "a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interests from being deemed abandoned if filed within 60 days after notice of the surface owner's intent to declare those interests abandoned." *Id.*

{¶45} The Ohio Supreme Court analyzed the facts of *Dodd* in light of their holding. The mineral interest holder in *Dodd* did not file his affidavit in the 20 years preceding the notice of intent to declare the mineral interests abandoned and he did not identify a saving event in the 20 years preceding the notice. *Id.* However, he did file an affidavit that the Court found, in form and substance, satisfied the requirements for a claim to preserve under R.C. 5301.56(C) and it was filed within the 60 days after the notice by the surface owner. *Id.* The affidavit outlined the history of transactions affecting the mineral rights underlying the surface property, identified thirty-six people as the current owners of the minerals and oil and gas who did not intend to abandon their rights, and stated these

people intended to preserve their rights. *Id.* The Court found this affidavit sufficient to preserve the interest of the mineral holders. *Id.*

{¶46} The Supreme Court reaffirmed the holding in *Dodd* in *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.2d 427. Citing *Dodd*, the Court found a timely affidavit and claim to preserve mineral interests sufficient to prevent the mineral rights from being "deemed abandoned" and prevent the mineral rights from vesting in the surface owner when the affidavit stated the mineral-holder was the owner of the oil, gas, coal, and other minerals in a 1965 deed and he had no intention of abandoning the mineral interests. *Id.* The Supreme Court stated that "whether a saving event occurred is not an issue that needs to be resolved in this case" because the mineral-holder's "claim to preserve his mineral rights was sufficient under the 2006 version of the act to prevent the mineral rights from being deemed abandoned and vested in the owner of the surface estate." *Id.*

{¶47} The Supreme Court again reiterated its position in its denial of a motion for reconsideration in *Farnsworth v. Burkhart*, 147 Ohio St.3d 1439, 2016-Ohio-7677, 63 N.E.3d 157. In their motion for reconsideration, the Farnsworth appellants made the same argument as the Wendts in this case, that, under the 2006 version of the ODMA, a conclusive presumption arises once the surface owner serves the notice of abandonment and files the notice of abandonment and that a claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) does not prevent the conclusive presumption from arising. *Id.* The Ohio Supreme Court denied the motion for reconsideration. *Id*; see also *Bayes v. Sylvester*, 7th Dist. Mahoning No. 13 MO 0020, 2017-Ohio-4033.

{¶48} In this case, the Wendts published a notification of abandonment on October 11, 2011 and, on October 21, 2011, recorded an affidavit of abandonment with the Harrison County Recorder's Office. The affidavit stated the mineral interests previously owned by holders John and Marjorie Dickerson were deemed abandoned pursuant to R.C. 5301.56(B) from 1989 to 2006 and vested in the owner of the surface as of March 22, 1992.

{¶49} On December 9, 2011, the Dickersons recorded two claims to preserve mineral interest regarding any mineral interests inherited from Marjorie Dickerson and John Dickerson with the Harrison County Recorder's Office. Pursuant to R.C. 5301.56(C), a claim to preserve must: (1) state the nature of the mineral interest claimed and any recording information upon which the claim is based; (2) comply with R.C. 5301.52; and (3) state the holder does not intend to abandon, but instead to preserve, the holder's rights in the mineral interest. See also *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147.

{¶50} R.C. 5301.52 provides the claim should: (1) be in the form of an affidavit; (2) state the nature of the claim being preserved and the names and addresses of the persons for whose benefit the notice is being filed; (3) contain an accurate and full description of all land affected by the notice in particular terms, except that if the claim is founded upon a recorded instrument the description may be the same as in the recorded instrument; (4) state the name of each record owner of the land affected by the notice, together with the recording information of the instrument by which each record owner acquired title to the land; and (5) be made by any person who has knowledge of the relevant facts.

{¶51} The claims to preserve in this case are factually analogous to those filed in *Dodd* and *Walker*. See also *M&H Partnership v. Hines*, 7th Dist. Harrison No. 14 HA 0004, 2017-Ohio-923 (finding affidavit constitutes a valid claim to preserve under R.C. 5301.56(H)(1)(a) and therefore no savings event needs to be specified therein); *Kross v. Ruff*, 7th Dist. Jefferson No. 13 JE 0035, 2017-Ohio-4276 (holding affidavit stating the nature of the interest, stating the relevant recording information, complying with R.C. 5301.52, and stating the holder's intent to preserve their interest is sufficient to preserve the mineral-holder's interest pursuant to R.C. 5301.56(H)(1)(a)); *DeVitas v. Draper*, 7th Dist. Monroe No. 13 MO 0017, 2017-Ohio-1136 (finding affidavit that specified the nature of the severed mineral interest, pertinent title transactions affecting the interest, the current surface owners, the heirs for whose benefit the notice was being filed, and stated it was made pursuant to the provision of R.C. 5301.52 for the purpose of preserving the royalty interest in oil and gas constitutes a valid claim to preserve pursuant to *Dodd* and no savings event is needed).

{¶52} Here, the claims to preserve are in the form of an affidavit; state the mineral interests claimed; list the recording information upon which the claim is based (1952 deed); list the names and addresses of the persons for whose benefit the notice is being filed as they include a list of the Dickerson heirs and each of their addresses; contain a full and accurate description of the land affected by the notice by including detailed information about each tract of land; state the name of each record owner of the land affected by the notice and the recording information by stating the Wendts are the current record owners of the land, referencing the deed through which the Wendts acquired the land, and including the specific language contained in the surface deed; are made by a

person who has knowledge of the relevant facts as they state the person making the claim "has knowledge of the relevant facts set out above"; and state the "claimant, as holder of such minerals, does not intend to abandon same, but, instead, intends to preserve its rights in such interest." Further, the claims to preserve were filed in the county recorder's office. R.C. 5301.56(H)(1). Finally, the Dickersons filed their claims within sixty (60) days from the date the notice was published, as they filed their claims fifty-nine days after the surface owners published the notice. R.C. 5301.56(H)(1). The claims to preserve comply with R.C. 5301.56(C) and R.C. 5301.56(H) and thus preserve the rights of all the mineral-interest holders in the land.

{¶53} Accordingly, even if there was no savings or preserving event of record in the twenty (20) years prior to the Wendts' serving of the notice and the Wendts properly served the notice pursuant to the 2006 ODMA, the binding case law of the Ohio Supreme court is controlling in this case such that the Dickersons preserved their rights by filing timely claims to preserve that comply with both R.C. 5301.56(H)(1) and R.C. 5301.56(C). Thus, the trial court did not err when it held the severed mineral interests at issue were not subject to judicial abandonment under R.C. 5301.56 and when it found title to the subject mineral rights in question should be quieted in favor of the Dickersons. The Wendts' second assignment of error is overruled.

**{¶54}** Based on the foregoing, appellants' assignments of error are overruled. The June 2, 2017 and July 14, 2017 judgment entries of the Tuscarawas County Court of Common Pleas are affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur