[Cite as *Thompson v. Custer*, 2018-Ohio-4476.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO


| | | |
|---|---|---|
| ANN HALL THOMPSON, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF EDWARD J. THOMPSON, DECEASED, et al., | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2017-T-0087** |
| Plaintiffs-Appellants/ Cross-Appellees, | : | |
| - vs - | : | |
| NATHAN J. CUSTER, et al., | : | |
| Defendants-Appellees/ Cross-Appellants, | : | |
| | : | |
| BP AMERICA PRODUCTION CO., | : | |
| Defendant-Appellee. | | |


Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CV 2358.

Judgment: Affirmed.


*Michael D. Rossi*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482; and *Marty Nosich*, The Law Offices of Marty D. Nosich, L.L.C., 143 West Main Street, Cortland, OH 44410 (For Plaintiffs-Appellants/Cross-Appellees).

*Gregory W. Watts* and *Matthew W. Onest*, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., 4775 Munson Street, N.W., P.O. Box 36963, Canton, OH 44735-6963 (For Defendants-Appellees/Cross-Appellants).

*Peter A. Lusenhop*, Vorys, Sater, Seymour and Pease, LLP, 52 East Gay Street, P.O. Box 1008, Columbus, OH 43215; and *Steven A. Chang*, Vorys, Sater, Seymour and Pease, LLP, 106 South Main Street, Suite 1100, Akron, OH 44308 (For Defendant-Appellee).

TIMOTHY P. CANNON, J.

{¶1}    Appellants, Ann Hall Thompson, individually and as the Executrix of the estate of Edward J. Thompson[1], and Mae Thompson Baxter ("the Thompsons"), and cross-appellants, Nathan J. Custer and Noelle M. Custer ("the Custers"), appeal from the June 28 and August 21, 2017 judgment entries of the Trumbull County Court of Common Pleas.  The trial court granted summary judgment in favor of the Custers on the Thompsons' claims for slander of title, conversion, and unjust enrichment.  The trial court granted summary judgment in favor of the Thompsons on their quiet title claim. The trial court's judgment is affirmed for the following reasons.

{¶2}    On March 18, 1950, Isabel Bacon, Lorene Bacon Langley, and Lawrence H. Langley ("the Langleys") transferred approximately 100 acres in Vernon Township, Trumbull County, Ohio (hereinafter referred to as the "Real Estate") to LeRoy H. Rufener and Sylvia Valot Rufener ("the Rufeners").  The Langleys reserved an interest in one half of the oil and gas rights.  The deed was recorded on March 22, 1950.

{¶3}    The Custers are the current surface owners of the Real Estate and have been since 2011.  The Custers also own an undisputed one-half mineral interest in the Real Estate.  Ownership of the remaining one-half mineral interest became the subject of dispute between the Custers and the Thompsons.  The Thompsons claim the interest as the Langleys' living heirs.

{¶4}    On April 11, 2012, the Custers entered into an oil and gas lease with appellee, BP America Production Company ("BP") for the mineral interests.  Pursuant to

---

1. Upon the death of Edward J. Thompson during the trial court proceedings, Ann Hall Thompson, as Executrix of the Estate of Edward J. Thompson, was substituted as a party plaintiff.

2

the lease, BP agreed to pay the Custers a signing bonus of $3,900.00 per net acre contained within the leased premises, subject to BP's determination that the Custers have defensible title to the leased premises. A "Memorandum of Oil and Gas Lease" pertaining to the Custers' lease with BP was recorded in Trumbull County on April 12, 2012.

{¶5} BP sent the Custers a Title Defect Notice on September 22, 2012, as a result of the Langleys' reservation of the one-half mineral interest in the 1950 recorded deed to the Rufeners. This effectively reduced the net acres leased from the Custers to BP by one-half. BP paid the Custers half of the negotiated signing bonus, in the amount of $192,977.85, on or about October 25, 2012.

{¶6} On October 11, 2012, BP entered into an oil and gas lease with the Thompsons for their share of the mineral interests. A "Memorandum of Oil and Gas Lease" pertaining to the Thompsons' lease with BP was recorded in Trumbull County on October 25, 2012. The lease itself is not included in the record before us.

{¶7} On December 6, 2012, the Custers filed an Affidavit of Abandonment with the Trumbull County Recorder, describing the disputed one-half mineral interest as "abandoned" and averring they now hold the entire mineral interest as owners of the surface rights. Due to a timing issue with notice and publication, the Custers recorded a second Affidavit of Abandonment on March 18, 2013.

{¶8} On March 20, 2013, BP sent the Thompsons a Title Defect Notice, as a result of its determination that the mineral interest was entirely vested in the surface owner. BP indicated it would not pay the Thompsons the signing bonus unless they were able to clear all defects to BP's satisfaction. On March 25, 2013, the Thompsons

recorded a Notice of Claim to Preserve Mineral Interest, stating they do not intend to abandon but, instead, to preserve their rights in the mineral interest.

{¶9} BP subsequently decided, however, that the entire mineral interest was vested in the Custers and paid them the remaining half of the negotiated signing bonus, in the amount of $192,977.85, on or about July 30, 2013. They recorded a Ratification, Amendment and Memorandum of Oil and Gas Lease on August 2, 2013, which indicated BP had delivered the signing bonus to the Custers under the terms of their original lease.

{¶10} On December 4, 2013, the Thompsons filed a two-count complaint against the Custers, BP, and the Ohio Attorney General, requesting (1) a declaratory judgment that the Thompsons are the lawful owners of the disputed one-half mineral interest and (2) a declaratory judgment that the 1989 Ohio Dormant Mineral Act is unconstitutional.

{¶11} The Thompsons and the Custers submitted competing summary judgment motions, and the trial court granted summary judgment in favor of the Custers. The trial court considered application of the current and former version of R.C. 5301.56, known as Ohio's Dormant Mineral Act ("DMA"). The trial court determined that under the 1989 DMA, the disputed one-half mineral interest merged with the surface rights in 1992. The trial court concluded the 2006 DMA did not revive a claim that was already abandoned and vested in the 1992 surface owners.

{¶12} The Thompsons filed a notice of appeal, and this court affirmed the trial court's judgment. We held that "[t]he plain language of the 1989 version of R.C. 5301.56 provided for automatic vesting of the mineral rights in the surface owner unless a 'savings event' occurred within the preceding 20 years." *Thompson v. Custer*, 11th

4

Dist. Trumbull No. 2014-T-0052, 2014-Ohio-5711, ¶22. "Additionally, former R.C. 5301.56(B)(2) provided that a mineral interest shall not be deemed abandoned due to a lack of savings events until three years from the March 22, 1989 effective date of the act." *Id.* It was undisputed that after 1950, no action was taken regarding the reserved one-half mineral interest until the Thompsons' recording of the Memorandum of Gas and Oil Lease with BP in October 2012. Accordingly, we held the disputed one-half mineral interest in the Real Estate vested in the surface owners on March 22, 1992. *Id.* We further held that, as the 1989 DMA "did not involve a retroactive application that would have stripped mineral rights owners of their rights upon its effective date, it is therefore constitutional." *Id.* at ¶28.

{¶13} On September 15, 2016, the Supreme Court of Ohio reversed our decision and remanded the case to the trial court on the authority of *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796 and *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793. *See Thompson v. Custer*, 150 Ohio St.3d 347, 2016-Ohio-5823.

{¶14} In *Corban*, the Ohio Supreme Court concluded "that the 1989 law was not self-executing and did not automatically transfer ownership of dormant mineral rights by operation of law." *Corban*, *supra*, at ¶28. "Rather, a surface holder seeking to merge those rights with the surface estate under the 1989 law was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned." *Id.* The Supreme Court explained that the 2006 DMA "modified only the method and procedure by which the right [to abandoned mineral interests] is recognized and protected." *Id.* at ¶35. As of the 2006 effective date, "R.C. 5301.56(E) directs the

5

surface holder to give advance notice to the mineral rights holder, allowing it an opportunity to preserve its mineral rights from being deemed abandoned and merged with the surface estate." *Id.* at ¶30. The Supreme Court held that applying the 2006 DMA to *all* claims asserted after the effective date of the statute "does not impair vested rights in violation of the Retroactivity Clause contained in Article II, Section 28, of the Ohio Constitution." *Id.* at ¶32. In *Walker*, the Supreme Court held that, pursuant to the 2006 DMA, a mineral interest holder's Affidavit and Claim to Preserve Mineral Interests, filed within 60 days of the surface owner's Affidavit of Abandonment, "was sufficient to prevent the mineral rights from being 'deemed abandoned and vested' in the surface owner." *Walker*, *supra*, at ¶18-19.

**{¶15}** On September 23, 2016, the Thompsons filed in the trial court a motion for leave to file a supplemental complaint instanter, pursuant to Civ.R. 15(E). The supplemental complaint alleged the following claims: (1) slander of title against the Custers and BP, alleging the Memorandum of Oil and Gas Lease, Affidavits of Abandonment, and Ratification, Amendment and Memorandum of Oil and Gas Lease were slanderous statements disparaging the Thompsons' title; (2) conversion, alleging the Custers' lease with BP was invalid and that the Custers converted all money, rents, and royalties therefrom; and (3) unjust enrichment, alleging the Custers should not be permitted to retain wrongfully obtained benefits.

**{¶16}** On October 3, 2016, the Thompsons filed a motion for leave to amend their supplemental complaint instanter, pursuant to Civ.R. 15(A), adding claims for (4) tortious interference with contract relations and (5) quiet title. The Custers and BP filed briefs in opposition.

6

{¶17} On November 29, 2016, the trial court issued a judgment entry in which it treated the motion for leave to file a supplemental complaint as a motion for leave to amend the original complaint and granted said motion. The trial court specifically referenced only the first three supplemental claims; it is clear from the record, however, that it was understood by the parties and the court that the Thompsons had been granted leave to prosecute all five supplemental claims.

{¶18} On December 15, 2016, the Custers filed a motion for partial summary judgment, arguing they were entitled to summary judgment on the Thompsons' claims for slander of title, conversion, unjust enrichment, and tortious interference. On March 21, 2017, the Thompsons filed a brief in opposition and a cross-motion for summary judgment against the Custers. The Thompsons withdrew their claim for tortious interference and moved for summary judgment on their quiet title claim. The Custers filed a reply brief, arguing the 2006 DMA was unconstitutional as applied to them.

{¶19} BP also filed a motion for partial summary judgment on the Thompsons' claim for slander of title. The Thompsons filed a brief in opposition and a cross-motion for partial summary judgment against BP.

{¶20} On June 28, 2017, the trial court granted summary judgment in favor of BP and the Custers on the Thompsons' claim for slander of title, and in favor of the Custers on the claims for conversion and unjust enrichment.

{¶21} On August 21, 2017, the trial court granted summary judgment in favor of the Thompsons on their quiet title claim. The trial court applied the 2006 DMA, pursuant to *Corban*. The trial court held the Thompsons filed a timely Notice of Claim to Preserve

Mineral Interest in response to the Custers' Affidavit of Abandonment, which was sufficient to preserve their one-half mineral interest.

{¶22} The Thompsons noticed a timely appeal, and the Custers cross-appealed. BP has not filed a brief on appeal. We consider the assignments of error out of order for ease of discussion.

{¶23} The Custers' first cross-assignment of error states:

{¶24} "The trial court erred when it permitted appellants/cross-appellees to amend their complaint to file additional claims seeking monetary damages, after this case had already proceeded through the appeals process."

{¶25} The Custers submit that the trial court abused its discretion in granting the Thompsons leave to assert additional claims seeking monetary damages, to wit: slander of title, conversion, unjust enrichment, and tortious interference with contract relations, because they relied solely upon facts in existence prior to the filing of their original 2013 complaint.

{¶26} Civ.R. 15(A) states, in pertinent part:

> A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Civ.R. 15(C).

{¶27} "[T]he decision whether to grant a motion for leave to amend a pleading under Civ.R. 15(A) is within the discretion of the trial court. However, the language of Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6 (1984), citing *Foman v. Davis,* 371 U.S. 178, 182 (1962). Therefore, "[t]he granting of a motion for leave to amend a pleading shall not be disturbed on appeal absent a showing of bad faith, undue delay or undue prejudice to the opposing party." *Id.* at paragraph two of the syllabus.

{¶28} The trial court granted the Thompsons leave to amend their original complaint on the grounds that it was not untimely and there was no undue prejudice to the Custers. It held:

> [T]his case has only been active in this Court for a short time. Summary judgment was granted in favor of the defendants on June 16, 2014. Appeal was taken to the Eleventh District Court of Appeals which affirmed the summary judgment decision on December 29, 2014. Subsequently and more recently on September 30, 2016, the Court of Appeals rendered an additional mandate reversing the summary judgment in accordance with precedent from the Ohio Supreme Court.
>
> Therefore, from the perspective of an active docket in this Court, the matter is relatively young. As a result, the Court finds the undue prejudice and timeliness arguments are not well taken. The matter was pending in this Court for barely six months. During that time, limited discovery, if any, was conducted relative to the summary judgment issues.

{¶29} The record supports the trial court's finding that there was no undue delay or undue prejudice to the Custers. Further, there has been no showing of bad faith. Therefore, we conclude the trial court did not abuse its discretion in granting the Thompsons leave to amend their complaint.

**{¶30}** The Custers' first cross-assignment of error is without merit.

**{¶31}** The Thompsons' sole assignment of error states:

**{¶32}** "The trial court erred in entering summary judgment in Defendants Custer's [sic] favor on Plaintiffs' conversion and unjust enrichment claims below."

**{¶33}** The Thompsons present the following two issues for review: "[1.] Whether Conversion lies where the converter acquired possession of the owner's personal property by mistake"; and "[2.] Whether an actionable 'unjust enrichment' claim includes mistaken third-party conference of benefit upon the defendant that, in equity and good conscience, belongs to the plaintiff."

**{¶34}** Civ.R. 56(C) provides that summary judgment is proper when

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶35}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court [e.g., pleadings, depositions, answers to interrogatories, etc.] which demonstrate the absence of a genuine issue of fact on a material element of the moving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996), citing Civ.R. 56(C) and *Celetox Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). If the moving party satisfies this burden, the nonmoving party has the burden to provide evidence demonstrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Id.* at 293.

10

{¶36} On appeal, we review a trial court's entry of summary judgment de novo, i.e., "independently and without deference to the trial court's determination." *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted); *see also Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶37} The Thompsons' first issue for review pertains to their conversion claim against the Custers.

{¶38} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990), citing *Zacchini v. Scripps-Howards Broadcasting Co.*, 47 Ohio St.2d 224, 226 (1976), *rev'd on other grounds*, 433 U.S. 562 (1977). "In order to set forth a cause of action for conversion, one must allege that he has ownership or a right to possess the property at the time; that another wrongly converted or disposed of the property; and resulting damages." *Kish v. Magyar*, 11th Dist. Ashtabula No. 2015-A-0059, 2016-Ohio-7355, ¶48 (citation omitted). "In order to maintain an action for conversion of money, the plaintiff must establish that the funds were 'earmarked,' that is, that the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt." *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 10th Dist. Franklin No. 14AP-482, 2015-Ohio-2166, ¶31, citing *Haul Transport of Virginia, Inc., v. Morgan*, 2d Dist. Montgomery No. 14859, 1995 WL 328995 (June 2, 1995).

{¶39} The Thompsons argue they are entitled to half of the bonus payment the Custers received from BP (i.e., $192,977.85) because they have defensible title to one-

11

half of the mineral interests and the Custers converted those funds. In support of their argument, the Thompsons cite to *Eisenbarth v. Reusser*, 7th Dist. Monroe No. 13 MO 10, 2014-Ohio-3792. The facts of *Eisenbarth*, however, are distinguishable from the present case.

{¶40} In *Eisenbarth*, William Eisenbarth transferred two tracts of land to Paul and Ida Eisenbarth. *Id.* at ¶5. William reserved a one-half mineral interest in the land for himself but expressly gave the right to lease the entire mineral interest to Paul and Ida. *Id.* William then transferred his one-half mineral interest to his daughter, Mildred Reusser. *Id.* Paul and Ida's interest in the land, including the right to lease the entire mineral interest, was eventually transferred to their children; Mildred Reusser's one-half mineral interest was transferred to her children. *Id.* at ¶6-7. The Eisenbarths signed an oil and gas lease for the entire mineral rights, and the Reussers argued they were entitled to half the signing bonus from that lease, pursuant to their one-half interest in the mineral rights. *Id.* at ¶8-9. The trial court awarded half of the signing bonus to the Reussers. *Id.* at ¶10. On appeal, the Eisenbarths argued that because they were the exclusive owners of the right to lease the mineral rights, they were entitled to the entire bonus payment. *Id.* at ¶55. The Seventh District Court of Appeals determined that the right to lease and the right to bonus payments are separate attributes of a severed mineral interest that can be separately transferred. *Id.* at ¶61. The Court further determined the Reussers had retained their right to bonus payments and were therefore entitled to their proportionate share of the bonus payment from the lease. *Id.* at ¶62.

{¶41} Here, the Thompsons have retained both the right to lease their one-half mineral interest and the right to receive bonus payments, as they did not convey either

12

of those rights to the Custers. Thus, unlike the Eisenbarths, the Custers did not have the right to lease any portion of the mineral interest they did not own. There was no agreement or transfer of rights between the Thompsons and the Custers under which the Custers had any obligation to deliver any portion of the signing bonus to the Thompsons.

{¶42} The Custers were also under no obligation, under the terms of their lease with BP, to deliver half of the signing bonus to the Thompsons. The Thompsons were free to enter into their own lease for their one-half mineral interest, which they did. The lease itself is not included in the record before us, only the memorandum of lease, which does not include terms of any negotiated signing bonus. Regardless of whether the Thompsons' lease contains a provision for a similar signing bonus, the Thompsons are not entitled to half the signing bonus that was negotiated between the Custers and BP, as they were not party to that contract.

{¶43} The lease between the Custers and BP provides: "The bonus payment shall be paid to the Lessor * * * subject to Lessee's determination that Lessor has Defensible Title to the Leased Premises[.]" This provision does not assign any portion of the bonus payment to a third party. Rather, it indicates that BP will not pay the bonus payment unless BP determines the Custers have defensible title to the leased premises. As the bonus payment was part of the consideration for the lease agreement between the Custers and BP, any issue regarding a mistaken overpayment is an issue to be resolved between the Custers and BP. The Custers, however, have no legal obligation to pay any portion of what they received from BP to the Thompsons.

13

{¶44} The first issue under the Thompsons' sole assignment of error is not well taken.

{¶45} The second issue presented for review pertains to the Thompsons' unjust enrichment claim. The Thompsons argue the Custers were unjustly enriched by retaining the entire signing bonus.

{¶46} "The doctrine of unjust enrichment provides an equitable remedy imposed to prevent injustice." *Giles v. Hanning*, 11th Dist. Portage No. 2001-P-0073, 2002-Ohio-2817, ¶13 (citation omitted). Unjust enrichment occurs when one individual receives a benefit which, in justice and equity, belongs to another. *Id.*, citing *Adkins v. Thompson*, 11th Dist. Portage No. 98-P-0045, 1999 WL 689750, *3 (Aug. 20, 1999), citing *Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio*, 40 Ohio St.3d 109, 111 (1988). "The elements of unjust enrichment are: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Id.*, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶47} We have already determined the Thompsons were not entitled to the benefit at issue, i.e., half of the Custers' signing bonus, as a matter of law. Further, any benefit the Custers received under the lease they negotiated with BP was conferred upon them by BP, not by the Thompsons. Based on this fact alone, the Thompsons cannot succeed on their claim of unjust enrichment as a matter of law. The Thompsons assert this is "a myopic understanding and expression of the unjust enrichment doctrine." In support, they cite to a 1973 treatise on remedies. Ohio law is clear, however, that the benefit unjustly retained must have been conferred on the defendant

14

by the plaintiff. *See, e.g., Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶22; *Paulus v. Beck Energy Corp.*, 7th Dist. Monroe No. 16 MO 0008, 2017-Ohio-5716, ¶94-95; *see also Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954) ("The purpose of the quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant.").

{¶48} The second issue under the Thompsons' sole assignment of error is not well taken.

{¶49} Accordingly, the Thompsons' sole assignment of error is without merit.

{¶50} The Custers' second cross-assignment of error states:

{¶51} "The trial court erred when it held that the one-half (1/2) severed mineral interest at issue was not presumed abandoned and subject to judicial abandonment pursuant to R.C. 5301.56 (in effect prior to June 30, 2006)."

{¶52} Under this assignment of error, the Custers challenge the trial court's grant of summary judgment in favor of the Thompsons on their quiet title claim. The Custers assert the 1989 DMA conferred property rights in the form of a conclusive presumption and/or cause of action, as enunciated by the Ohio Supreme Court in *Corban*. They argue that application of the 2006 DMA to them, as instructed by *Corban*, is a violation of their Fifth and Fourteenth Amendment rights under the United States Constitution.

{¶53} "Where an act is challenged on the ground that it is unconstitutional when applied to a particular state of facts, the burden rests upon the party making such attack to present clear and convincing evidence of a presently existing state of facts which

15

makes the act unconstitutional and void when applied thereto." *Belden v. Union Central Life Ins. Co.*, 143 Ohio St. 329 (1944), paragraph six of the syllabus, citing *Nashville, C. & St. L. Ry. Co. v. Walters, Commr. of Highways*, 294 U.S. 405 (1935).

{¶54} The Fourteenth Amendment to the United States Constitution provides, in part, that no State shall deprive any person of property without due process of law. The Fifth Amendment, as applied to the States through the Fourteenth Amendment, provides, in part, that private property shall not be taken for public use without just compensation.

{¶55} "[P]roperty interests are founded on the procedural aspects of due process; they are not substantive rights created by the federal Constitution." *1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 36 (1990), citing *Cooperman v. Univ. Surgical Assoc., Inc.*, 32 Ohio St.3d 191, 200 (1987) (citations omitted). In order to establish a procedural due process claim, the Custers must show that (1) they had a property interest protected by the Due Process Clause; (2) they were deprived of that interest; and (3) the state did not afford adequate procedural rights prior to depriving them of the protected interest. *Women's Med. Professional Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir.2006).

{¶56} We must first determine whether the Custers' premise is correct, to wit: that the 1989 DMA, as enunciated by the Ohio Supreme Court in *Corban*, conferred upon them a constitutionally-protected property interest. "Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain

16

benefits and that support claims of entitlement to those benefits.'" *1946 St. Clair*, *supra*, at 36, quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

**{¶57}** In *Corban*, the Ohio Supreme Court considered the following certified question: "Does the 2006 version or the 1989 version of the [Dormant Mineral Act] apply to claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the surface land holder prior to the 2006 amendments as a result of abandonment." *Corban*, *supra*, at ¶1. The Court concluded "that the 2006 version of the Dormant Mineral Act, which is codified at R.C. 5301.56, applies to all claims asserted after June 30, 2006," even to those that allege mineral rights were abandoned and vested prior to the 2006 effective date. *Id.* at ¶2.

**{¶58}** The 1989 DMA, codified in former R.C. 5301.56, stated: "Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface," unless (a) the mineral interest was related to coal, (b) the interest was held by the United States, the state of Ohio, or another political body described in the statute, or (c) one or more of certain enumerated saving events had occurred within the preceding 20 years. Former R.C. 5301.56(B)(1).

**{¶59}** The lead opinion in *Corban* determined that the words "deemed abandoned" "created a conclusive presumption by establishing that a mineral rights holder had abandoned a severed mineral interest if the 20 year statutory period passed without a saving event." *Id.* at ¶25. The lead opinion further explained that "by providing a conclusive presumption that the mineral interest had been abandoned in favor of the surface owner if the holder failed to take timely action to preserve it, the

17

legislature provided an effective method of terminating abandoned mineral rights through a quiet title action." *Id.*

**{¶60}** We first note that *Corban* is a plurality opinion, and a majority of the justices did not join in the "conclusive presumption" analysis. *See Wendt v. Dickerson*, 5th Dist. Tuscarawas No. 2017 AP 080024, 2018-Ohio-1034, ¶28. Therefore, it is merely persuasive and not binding on lower courts. *See, e.g., State v. Helms*, 7th Dist. Mahoning No. 08 MA 199, 2012-Ohio-1147, ¶83, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 218, fn. 7 (1986) (Celebrezze, C.J., concurring in part and dissenting in part), citing *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44 (1986), *rev'd on other grounds*.

**{¶61}** A majority of the *Corban* Court did agree, however, that the 1989 DMA "was not self-executing and did not automatically transfer ownership of dormant mineral rights by operation of law." *Corban, supra*, at ¶28; *id.* at ¶104 (Kennedy, J., concurring in this part of the decision). The Court concluded that, under the 1989 DMA, a property right to dormant mineral interests vested in the surface holder *only* if the surface holder commenced a quiet title action and the mineral rights holder failed to prove certain conditions were met. *Id.* at ¶25-28.

**{¶62}** The 2006 DMA now provides that a dormant mineral interest "shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied[.]" R.C. 5301.56(B). "R.C. 5301.56(E) directs the surface holder to give advance notice to the mineral rights holder, allowing it an opportunity to preserve its mineral rights from

18

being deemed abandoned and merged with the surface estate." *Corban*, *supra*, at ¶30, citing R.C. 5301.56(E), (F), & (G).

**{¶63}** Under the 2006 DMA, surface holders "were not deprived of the right to bring a cause of action for abandonment through a quiet title or declaratory judgment action. Rather, what changed was the procedural process, including statutory notice and recording procedures, by which mineral rights are deemed abandoned and vested in the surface holder." *Wendt*, *supra*, at ¶29, citing *Corban*, *supra*, at ¶35. Thus, surface holders who had not succeeded in a quiet title action to obtain the mineral rights as directed under the 1989 DMA lost no property rights when the statute was amended in 2006.

**{¶64}** Here, the Custers' due process rights were not violated because they never enjoyed a vested property interest in the disputed one-half portion of the mineral interests. Neither the Custers nor their predecessors in the surface rights ever commenced, let alone succeeded in, a quiet title action prior to enactment of the 2006 DMA. They argue that because an action did not require notice to the holder of the dormant mineral rights prior to June 30, 2006, but did so require thereafter—without any notice of such change to the surface holder—they were deprived of due process. We note, however, that the Custers did not own the Real Estate until 2011. Therefore, even assuming the 2006 DMA did deprive surface holders of a right to bring a cause of action, that right did not belong to the Custers when the statute was amended. At the time the Custers purchased the Real Estate, the 2006 DMA was already in full force and effect.

{¶65} The trial court did not err in granting summary judgment in favor of the Thompsons on their claim for quiet title against the Custers.

{¶66} The Custers' second cross-assignment of error is without merit.

{¶67} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.