[Cite as *State v. Timm*, 2023-Ohio-3768.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| GARY TIMM, JR. | : | Case No. 21-CAA-11-0060 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 20 CR I 11 0738


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 October 16, 2023


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MELISSA A. SCHIFFEL                       ERIC J. ALLEN
KATHERYN L. MUNGER                        4200 Regent Street
145 North Union Street, 3rd Floor         Suite 200
Delaware, OH  43015                       Columbus, OH  43219

*King, J.*

{¶ 1}   Defendant-Appellant Gary Timm, Jr. appeals his October 2021 judgment of conviction and sentence for one count of rape and one count of gross sexual imposition. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In early 2019, A.R. was 15 years old. She lived with her grandfather, R.R., her uncle, B.R., her older sister L.R., and L.R.'s boyfriend, appellant herein.

{¶ 3}   In February 2019, L.R. gave birth to her and appellant's son. Shortly thereafter, L.R., appellant, and the infant moved to their own apartment a short drive away from R.R. At that point, A.R. had a good relationship with appellant. She considered him a friend and had no reason to dislike or fear him.

{¶ 4}   On a date somewhere between March and May of 2019, A.R. went home from school sick. Her uncle, B.R. picked her up, took her home, and then left for work. Thereafter, appellant arrived at A.R.'s home to either drop off or pick up a car jack. While there, appellant spoke with A.R. about being bullied at school, gave her some advice, and then left.

{¶ 5}   Appellant returned a short time later to do laundry, something that was not typical as L.R. usually handled that task or she and appellant did it together. L.R. was supposed to do the laundry that day, but appellant volunteered. L.R. found this odd. Before appellant left, L.R asked who was home at R.R.'s and appellant said A.R. was home.

{¶ 6}   Once appellant arrived, he asked A.R. to accompany him to the basement to start the laundry. Once in the basement, appellant told A.R. she looked tense and

asked if she wanted a massage. A.R. said "I don't know" to which appellant responded "Ya. I'll give you a massage." Appellant then directed A.R to lay on her stomach over a barstool. Feeling uncertain, A.R. sat on the barstool. Appellant corrected her, telling her "no, on your stomach." A.R. complied. Once A.R. was lying over the stool, appellant did rub A.R.'s back, but then pulled her leggings and underwear down and digitally penetrated her vagina. Taken by surprise, A.R. felt paralyzed with fear and unable to voice her objection. Appellant then asked A.R. if she wanted "it" inside her, apparently referring to his penis. A.R. found her voice, and said "No, I'm okay. I just want to go upstairs."

{¶ 7}   A.R. fixed her clothing and she and appellant went upstairs to the kitchen where A.R. sat on the counter. Appellant asked A.R. "You're not going to tell anybody, right?" A.R. stated she would not. Appellant then said "Okay. Give me a hug" and A.R. complied.

{¶ 8}   About that time, L.R. made a Facetime call to appellant because he had been gone longer than necessary for their usual routine of simply switching over laundry loads and returning home in between instead of staying while the loads cycled. Asked what was taking so long appellant said he was waiting for clothes to dry. L.R. asked where A.R. was and appellant turned his phone to show A.R. sitting on the counter top. L.R. thought something seemed odd about A.R. during the call, but dismissed the thought.

{¶ 9}   Sometime after that incident, appellant and L.R. were together at A.R.'s house doing laundry. Appellant was helping A.R. take hair dye out of her hair using peroxide, while L.R. was in and out of the room handling the laundry. A.R. had asked L.R to help her with her hair, but appellant offered to do it.  A.R. was seated in front of the laundry room sink as appellant applied the peroxide. While performing the task, appellant

would tap A.R.'s elbows to get her to stand up, and then rub his crotch against A.R.'s buttocks. She would sit down and he would do the same thing again. Both were clothed, but A.R. believed appellant had an erection. A.R. once again felt too frozen with fear to respond and felt there was nothing she could do to make the assault stop.

{¶ 10} A.R. did not tell anyone about either incident for a while. She eventually told three friends who encouraged her to tell her grandfather, R.R. R.R. had noticed a change in A.R. leading up to her disclosure both emotionally and physically as A.R. had lost a lot of weight. R.R. left it up to A.R. to decide what she wanted to do next and initially A.R. decided to do nothing. But later, A.R. told her pediatrician who advised her to contact police.

{¶ 11} At the direction of Delaware City Police Department Detective Daniel Madden, R.R. took A.R. to Nationwide Children's Hospital Children's Advocacy Center (CAC) for a video recorded forensic interview and physical exam. A.R. disclosed the above outlined incidences to the interviewer. She further discussed the emotional impact of the events and the fact that her sister told her that after she and appellant fight he also asks her if she's going to tell anyone and then asks for a hug. Finally, A.R. underwent a genital examination which was normal.

{¶ 12} Detective Madden spoke to appellant who denied the allegations. He did acknowledge going to A.R.'s house to do laundry and initially stated he was there for a couple minutes; just long enough to switch over loads. He later stated he was there for 15 minutes, had advised A.R. to "keep her head up," and recalled the Facetime call from L.R. He also confirmed that he helped A.R. with her hair, but stated L.R. was in the basement with them the entire time.

{¶ 13} When A.R. told her sister L.R. what happened, L.R. was angry and did not want to believe A.R. She confronted appellant who denied anything ever happened between he and A.R. Sometime later, however, L.R. changed her mind. During an argument with appellant he told L.R. "that's why your sister came on to me." Further, the fact that A.R. said appellant asked if she was going to tell anyone and then asked for a hug was familiar to L.R. because appellant did the same thing with her when they argued.

{¶ 14} As a result of these events, on November 16, 2020, the Delaware County Grand Jury returned an indictment charging appellant with one count of rape in violation of R.C. 2907.02(A)(2), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1). Appellant pled not guilty to the charges and opted to proceed to a jury trial which began on October 5, 2021 and concluded on October 7, 2021.

{¶ 15} At trial, the state presented the above outlined evidence including the video of A.R.'s forensic interview which was redacted as agreed upon by the state and counsel for appellant.

{¶ 16} Appellant testified on his own behalf. As to the first incident, he initially stated he never borrowed a car jack, but later in his testimony stated he did. He testified it was not unusual for him to stop by and do laundry and that nothing happened between he and A.R. that day. He stated their interaction was limited to him seeing her on the sofa crying and him telling her to keep her head up before he left. He stated neither the Facetime call nor the hug after allegedly asking A.R. not to tell ever happened.

{¶ 17} As for the second incident. Appellant confirmed he helped A.R. with her hair, but stated L.R. was in the basement with them the entire time and therefore nothing untoward happened between he and A.R.

{¶ 18} Appellant first testified A.R. was lying about these incidents, but he did not know why. He later testified A.R. was lying to keep him away from his son so he would go to prison and L.R. would get sole custody of their son.

{¶ 19} After receiving the evidence and deliberating, the jury found appellant guilty as charged. At a later sentencing hearing, appellant was sentenced to an indefinite prison term of 6 to 9 years for rape, and a definite term of 12 months for gross sexual imposition. Appellant was ordered to serve the sentences consecutively. Appellant was further classified as a Tier III sex offender.

{¶ 20} Appellant timely filed an appeal and we affirmed appellant's convictions. *State v. Timm*, 5th Dist. Delaware App. No. 21 CAA 11 0060, 2022-Ohio-3010 (*Timm I*). In his direct appeal, appellant raised six assignments of error challenging 1.) a jury instruction regarding force; 2.) the sufficiency of the evidence as it related to his conviction for rape; 3.) the manifest weight of the evidence as it pertained to his conviction for gross sexual imposition; 4.) the admission of victim impact testimony; 5.) an ineffective assistance of trial counsel which was limited to trial counsel's failure to challenge the constitutionality of the Regan Tokes Act and; 6.) cumulative error.

{¶ 21} On September 8, 2022, appellant filed an application for reconsideration. On September 26, 2022, we denied appellant's application.

{¶ 22} On November 9, 2022, appellant filed a motion in support of jurisdiction with the Supreme Court of Ohio. On January 17, 2023, the court declined jurisdiction.

{¶ 23} On December 22, 2022, appellant filed a motion seeking to reopen his appeal pursuant to App.R. 26(B). The motion was granted on January 23, 2023. Upon reopening, appellant raises three assignments of error as follow:

I

{¶ 24} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN TRIAL COUNSEL FAILED TO OBJECT TO A JURY INSTRUCTION WHICH LOWERED THE BURDEN OF PROOF FOR THE OFFENSE OF RAPE."

II

{¶ 25} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN TRIAL COUNSEL FAILED TO OBJECT TO INADMISSIBLE IRRELEVANT VICTIM IMPACT TESTIMONY DURING THE TRIAL."

III

{¶ 26} "APPELLANT WAS DENIED DUE PROCESS GUARANTEED BY THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN THE COURT ALLOWED VICTIM IMPACT EVIDENCE IN THE TRIAL."

I

{¶ 27} Appellant's first assignment of error argues trial counsel rendered ineffective assistance by failing to object to an allegedly erroneous jury instruction. We disagree.

{¶ 28} To prevail on a claim of ineffective assistance of counsel, appellant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell

below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 29} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland,* 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674*.* "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones,* 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

{¶ 30} In *Timm I,* supra, we found that even if the instruction was erroneous, the outcome of the trial would have been no different. *Timm I* we found:

> As discussed in the first assignment of error, appellant agreed to a jury instruction which stated removing the clothing of another without consent for the purpose of engaging in sexual conduct or contact may constitute force. While we will not address whether or not that instruction is correct, we have recently held that placing a hand under clothing without something more does not constitute force. *State v. Moore*, 5th Dist. Morgan No. 21AP0003, 2022-Ohio-2349, ¶ 38.

Here, A.R. testified to something more. Appellant asked her to go to the basement with him. He then directed A.R. to lie on her stomach over a barstool under the ruse of giving her a backrub. Once appellant had manipulated A.R. into assuming this vulnerable position, he pulled A.R.'s leggings and underwear down and digitally penetrated her vagina. T. 232-235, state's exhibit 1. We find this evidence sufficient to prove force and to support appellant's conviction for rape.

{¶ 31} *Id.* ¶ 42-43.

{¶ 32} Therefore, even if we found counsel's agreement to the jury instruction constituted deficient performance, appellant still could not establish he was prejudiced thereby.

{¶ 33} The first assignment of error is overruled.

II

{¶ 34} In his second assignment of error, appellant makes a second ineffective assistance of counsel argument. In this assignment of error, appellant argues counsel rendered ineffective assistance by failing to object to victim impact testimony elicited by the state in its case-in-chief. Specifically, appellant argues trial counsel should have objected to (1) testimony from A.R. regarding the fact that she lost weight, suffered an eating disorder, engaged in self-harm, and is unable to trust people as a result of this incident; (2) testimony from A.R.'s friend F.H. regarding his observation that A.R. was

shaking, sweating, and queasy upon seeing appellant at R.R.'s home; and (3) R.R.'s testimony that A.R. now has an aversion to entering the basement where these events took place.

{¶ 35} Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 36} Like the jury instruction, this court also addressed a complaint of inadmissible victim impact testimony in *Timm I*. Because counsel did not object, we applied a plain error standard of review:

> We next address testimony by A.R. and R.R. regarding the emotional impact of the offenses on A.R. socially, emotionally, and physically. Most of this testimony was cumulative to statements A.R. made in the CAC video. A.R. also described how she "freaked out" when after the events appellant was on trial for occurred, he came to her house to visit his son. T. 245-247. A.R.'s grandfather, her friend F.H, and sister L.R. also testified regarding A.R.'s reaction to appellant's visit to the house. T. 157. However, A.R. discussed the same event in the CAC video shown to the jury as approved by counsel for appellant. We therefore find the testimony was merely cumulative.
>
> A.R. did testify to a few things that were not contained in the video. Specifically, she stated she struggles with trust and described

behaviors brought on by her victimization such as cutting herself, pulling her own hair, and the development of an eating disorder which caused her to lose more than 70 pounds. Appellant failed to object to any of this testimony. We therefore review his challenge for plain error. * * *

We agree with appellant that the victim impact testimony he now challenges was of any probative value and should have been excluded. However, we do not find plain error. While the matter of the victim impact testimony is subject to a plain error analysis, appellant has failed to raise or argue the existence of plain error here on appeal. The burden is upon appellant to affirmatively demonstrate error on appeal. App.R. 16(A)(7); *State v. Sims* 10th Dist. Franklin No. 14AP-1025, 2016-Ohio-4763, ¶ 10-11. We decline to construct a plain error argument on appellant's behalf. Further, even if that were not true, appellant cannot demonstrate the outcome of his trial would have been any different without the testimony as A.R. gave a clear and consistent accounting of incidences of rape and gross sexual imposition committed by appellant against her. Trial testimony also showed that before the first incident, appellant returned to A.R.'s home under the guise of doing laundry after he knew she was home alone. T. 292-294. Moreover, as discussed above, the majority of the

victim impact testimony was cumulative to the video of A.R.'s forensic interview.

{¶ 37} *Timm I*, ¶54-58

{¶ 38} Similarly, here, even if we found trial counsel's failure to object to the victim impact testimony fell below an objective standard of reasonable representation, appellant still fails to demonstrate prejudice.

{¶ 39} The second assignment of error is overruled.

III

{¶ 40} In his final assignment of error, appellant argues he was denied due process when the trial court allowed the victim impact testimony outlined in appellant's second assignment of error. We disagree.

{¶ 41} First, in support of his argument that the trial court erred by permitting the testimony, appellant cites *State v. Ponce*, 10th Dist. Franklin No. 95APA11-1450, 1996 WL 589267 (October 10, 1996). While *Ponce* involved a similar evidentiary circumstance, the appellant in *Ponce* objected to the admission of the complained of evidence. *Ponce* at *7. Appellant here did not and the matter is therefore subject to a plain-error analysis.

{¶ 42} Second, as previously outlined in our analysis of appellants second assignment of error, as well as in *Timm I*, appellant cannot demonstrate he was prejudiced by the admission of the evidence.

{¶ 43} The final assignment of error is overruled.

{¶ 44} The judgment of the Delaware County Court of Common Pleas is affirmed.

By King, J.,

Delaney, P.J. and

Baldwin, J. concur.