[Cite as *State v. McNair*, 2024-Ohio-107.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 00042 |
| TYLER McNAIR | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
Pleas, Case No.  2022 CR 00986

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        January 12, 2024

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

KYLE L. STONE        CATHERINE MEEHAN
PROSECUTING ATTORNEY        PATITUCE & ASSOCIATES, LLC
VICKI L. DeSANTIS        16855 Foltz Industrial Parkway
ASSISTANT PROSECUTOR        Strongsville, Ohio  44149
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}** Appellant Tyler McNair appeals his conviction on one count of Felonious Assault, entered in the Stark County Court of Common Pleas following a jury trial.

**{¶2}** Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS</u>

**{¶3}** For purposes of this Opinion, the relevant facts and procedural history are as follows:

**{¶4}** On June 1, 2022, the Stark County Grand Jury indicted Defendant-Appellant Tyler McNair in a three-count indictment with one count of Felonious Assault, in violation of R.C. §2903.11(A)(2)/(D)(1)(a), a felony of the second-degree, one count of Attempted Murder, in violation of R.C. §2923.02, a felony of the first degree, and one count of Aggravated Arson, in violation of R.C. §2909.02(A)(1)/(B)(2), a felony of the first degree.

**{¶5}** On March 8, 2023, a jury trial commenced in this matter.

**{¶6}** The State called seven witnesses: the victim ("T.I."); the victim's mother ("S.C."); the victim's father ("C.C."); Heather Bizub, a forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI"); Clara Gandy, R.N., from MetroHealth burn unit; Richard Bibighaus, an investigator for the City of Canton Fire Department ("CFD"); and Michael Mullins, a cellmate of Appellant.

**{¶7}** T.I., the victim, testified that she had been staying at 614 Marion Ave., S.W., remodeling her brother's house, for approximately two weeks prior to the incident. (T. Vol. I. at 140, 153, 195). The house was located about two blocks from her parents' house. (T. Vol. I. at 125). She told the jury that she had set up a two-room tent on the first floor

of the house and slept on a cot inside the tent. (T. Vol. I. at 155). She explained that she heated the tent with candles because there was no gas or electric in the house. (T. Vol. I. at 156, 157).

{¶8}    T.I.  testified that on April 26, 2022, her on-again/off-again boyfriend, Tyler McNair, stayed at the house to help paint. (T. Vol. I. at 156). She recalled that she fell asleep that night on one of the cots and woke up around 8:00 a.m. to find McNair sitting with some books on his lap on another cot. (T. Vol. I. at 159). She said that McNair asked her where his gold was and she replied, "I [don't] have it." (T. Vol. I. at 160). She testified that as she started to put her shoes on she noticed a blank look on McNair's face. And the next thing she recalled was McNair hitting her head, face, and arms several times with a hammer. (T. Vol. I. at 161-162). She testified that "[she] was trying to defend [her]self" and McNair told her, "We [a]re going to die together." (T. Vol. I. at 163). She stated that when McNair hit her, she knocked over the candle sitting on the table in the tent, which set a stuffed teddy bear on fire. (T. Vol. I. at 163). She said that she begged McNair to allow her to try to put out the fire, but he refused, so she pushed him and ran toward the front door and that as she ran, McNair hit her again in the back of the head. (T. Vol. I. at 164-165, 184).

{¶9}    T.I. recalled that her clothes had caught fire and that she tried to put the fire out with her hands. (T. Vol. I. at 165). She then ran to her parents' house and knocked on the door, where her dad answered. (T. Vol. I. at 166). The next thing she recalled was waking up in Cleveland MetroHealth hospital. (T. Vol. I. at 167).

{¶10}  T.I. sustained multiple injuries on her head, hands, and arms, including skull fractures, scars, and burns. (T. Vol. I. at 162, 168). T.I. explained she required skin grafts

for the burns and that her hands no longer work like they did before. (T. Vol. I. at 169). T.I. identified the claw hammer McNair used to hit her. (T. Vol. I. at 171). T.I. positively identified McNair as the person who attacked her. (T. Vol. I. at 172).

{¶11} T.I.'s father, C.C., testified that he heard T.I. screaming and pounding on his door and that she fell into the house as he opened the door. (T. Vol. I. at 141). He recalled that he helped her to the couch and called his wife. (T. Vol. I. at 142). T.I. told him she was in really bad pain; and then he saw an ambulance pull up to the house so he walked her out to the ambulance. (T. Vol. I. at 142).

{¶12} T.I.'s mother, S.C., testified that when she saw her daughter for the first time after the incident, T.I. was black from smoke, her hair was singed to her head, and blood and tears were streaming down her face. (T. Vol. I. at 128). She recalled that EMS initially took T.I. to Aultman hospital, but due to the trauma, she was transferred to Cleveland MetroHealth. (T. Vol. I. at 129). There, S.C. saw her daughter sedated but in terrible pain. *Id.* T.I. was in MetroHealth hospital almost two weeks and was then transferred to Mercy Hospital for several days. (T. Vol. I. at 131, 133).

{¶13} The jury also heard from Michael Mullins, McNair's cellmate, who testified that McNair confessed to him. (T. Vol. I. at 275). Mullins stated that McNair told him that he and T.I. were living in a tent inside an abandoned house. (T. Vol. I. at 269). McNair claimed T.I. was going through his phone, he became irate, and hit T.I. with a hammer a couple of times. *Id.* McNair told him that during the struggle a candle was knocked over which then caught other things inside the tent on fire and McNair panicked. *Id.* McNair told Mullins he then jumped out the window and ran, stating he cut himself a few times to make it look like T.I. attacked him first. (T. Vol. I. at 270). McNair also told Mullins that he

would need gold to get into heaven. (T. Vol. I. at 274). Mullins kited (used a machine to write a note) to a guard in his pod after McNair confessed to him.

{¶14} Mullins admitted, and the jury heard, he was a convicted felon and although released, he still had a pending case for identity fraud in Cuyahoga County, was currently on probation from Summit County for felony child support, was in veteran's court, and had misdemeanor theft and domestic violence charges. (T. Vol. I. at 277-279).

{¶15} Clara Gandy, R.N., from MetroHealth's burn unit testified that she treated T.I. at the hospital and had reviewed her records. (T. Vol. Vol. II. at 26, 58). She described the burns on T.I. as severe second and third-degree burns, and further noted the lacerations on T.I.'s head and arms required staples. (T. Vol. II. at 38). Ms. Gandy then described the third-degree burns on T.I.'s chest which required skin grafting taken from her thigh. (T. Vol. II. at 39). T.I. also had fractures to her skull and right hand. (T. II. at 44). Nurse Gandy identified numerous photographs of T.I.'s injuries. (T. Vol. II. at 34).

{¶16} Richard Bibighaus, Canton Fire Department Investigator, testified that he was dispatched and was first on the scene. (T. Vol. II. at 195). Investigator Bibighaus explained that T.I. was intubated and then placed on a ventilator in the hospital to protect her airway. (T. Vol. II. at 209). He stated that he personally observed T.I.'s injuries and also saw photographs of her at the hospital, and that injuries resembled lacerations from a claw hammer. (T. Vol. II. at 200-202, 212, 239). After seeing those photographs, he returned to the scene on Marion and located the hammer. (T. Vol. II. at 215). He stated that an evidence technician had found the claw hammer in the backyard, just outside the window, laying in a pile of rubble. (T. Vol. II. at 215-216). He explained that he found hair on the head of the hammer. (T. Vol. II. at 244, 252). He further explained that the person

who left through the back of the house exited through a window, not a door. (T. Vol. II. at 245). He told the jury that once he was able to speak to T.I., she told him that McNair was the person who attacked her. (T. Vol. II. at 238).

{¶17} Heather Bizub, a forensic scientist at BCI assigned to the DNA section, testified that she tested the hammer and found female DNA profile on the head of the hammer consistent with T.I.'s DNA profile. (T. Vol. II, at 11, 19).

{¶18} The defense presented the testimony of Appellant's mother who stated that she saw her son on the evening of the fire. (T. Vol. II at 76). Mrs. McNair indicated that Appellant had cuts on his hands and going up his fingers as if he were putting his arms up to try to grab. (T. Vol. II at 79-80). The cuts were significant enough that she suggested he go to the Emergency Room for stitches. (T. Vol. II. at 78-79). Mrs. McNair indicated that she was aware these injuries occurred in an altercation with T.I. (T. Vol. II at 82). Mrs. McNair was afraid for her son and wanted him to go to the hospital. (T. Vol. II. at 82). She also testified about an injury Appellant had on his right eye after the fire. (T. Vol. II. at 80). She took photographs of Appellant's injuries about one week after the incident. (T. Vol. II. at 80). On cross-examination, Mrs. McNair agreed that the cuts appeared linear and agreed that they could have come from glass. (T. Vol. II. at 83-84).

{¶19} After two days of testimony, Appellant was convicted of Felonious Assault. The Attempted Murder count was dismissed, and Appellant was acquitted of Aggravated Arson.

{¶20} On April 4, 2023, the trial court sentenced Appellant to an indefinite minimum prison term of eight (8) years up to a maximum prison term of twelve (12) years.

{¶21} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

**{¶22}** "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶23}** "II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARENTEED [SIC] BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUION [SIC] AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUION [SIC].

**{¶24}** "III. THE TRIAL COURT ERRED WHEN IT IMPOSED THE MAXIMUM PRISON TERM FOR ONE OFFENSE."

**I.**

**{¶25}** In his first assignment of error, Appellant claims his felonious assault conviction is against the manifest weight of the evidence. We disagree.

**{¶26}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶27}** Appellant herein was convicted of Felonious Assault, in violation of R.C. §2903.11(A)(2)/(D)(1)(a). which states:

(A) No person shall knowingly do either of the following:

(1) ***

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

***

(D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree. If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree.

**{¶28}** Appellant herein argues that the "record is filled with conflicting testimony which would make it difficult to surmount the claim that Appellant knowingly caused serious physical harm to T.I." and "replete with testimony regarding T.I.'s mental health status and her substance abuse issues." (Appellant's Brief at 4).

**{¶29}** While Appellant argues that the jury should not have believed the victim's testimony as what happened that day and how she was injured based on her mental health issues and her admission to using drugs in the days leading up to the incident, Appellant fails to point to any actual inconsistent testimony in the record.

**{¶30}** Even if inconsistent testimony had been presented, the jury may take note of inconsistencies and resolve or discount them accordingly, and such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar.

23, 2000), *quoting State v. Nivens*, 10th Dist. Franklin App. No. 95APA09-1236, 1996 WL 284714, (May 28, 1996).

{¶31} Here, the jury had before it the testimony of T.I., the victim, as to what took place on that morning. She testified that Appellant hit her in the head with a claw hammer more than once. Both the victim and Nurse Gandy testified as to the injuries T.I. sustained on her head, hands, and arms, including skull fractures, scars, and burns which required skin grafts. The jury also heard testimony from Michael Mullins which corroborated that of T.I. He testified that Appellant told him he hit T.I. with a hammer a couple of times, that during the struggle a candle was knocked over which then caught other things inside the tent on fire, and that he jumped out the window and ran. Mullins testified that Appellant told him that he cut himself a few times to make it look like T.I. attacked him first. The jury also heard from a forensic scientist who testified that she tested the hammer and found female DNA profile on the head of the hammer consistent with T.I.'s DNA profile.

{¶32} It was for the jury to determine the credibility of the testimony, and in this case, it is not patently apparent that the jury lost its way. Therefore, based on the evidence before this Court as set forth above, we do not find this to be an exceptional case in which the evidence weighs heavily against the conviction.

{¶33} Appellant's first assignment of error is denied.

II.

{¶34} In his second assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

{¶35} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors

prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶36} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, *supra* at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers. *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶18." *State v. Timm*, 5th Dist. Delaware No. 21-CAA-11-0060, 2023-Ohio-3768, ¶29.

{¶37} A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

{¶38} In this case, Appellant argues counsel was ineffective in (1) failing to challenge the composition of the jury pool, (2) failing to provide notice of intent to claim self-defense, and (3) failing to ask the defense witness additional questions on redirect.

*Jury Pool*

{¶39} Appellant, who is African-American, argues that only one African-American juror was on the venire, and that juror was ultimately excused for cause by both parties due to the juror's health and financial burden. Appellant argues that the jury panel failed

to reflect a cross-section of the community, and counsel should have objected to the composition.

**{¶40}** The Sixth Amendment guarantee to a jury trial contemplates a jury drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-529, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." *State v. Fulton*, 57 Ohio St.3d 120, 566 N.E.2d 1195 (1991), paragraph two of the syllabus, citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–587 (1979).

**{¶41}** In this case, other than defense counsel's personal observation that the venire appeared imbalanced, Appellant failed to produce any evidence demonstrating that African–Americans were underrepresented on the venire in relation to their percentage in the community. There is no evidence in the record whatsoever as to the race of the persons in the venire or on the master list of potential jurors, cognizable for purposes of the fair cross-section requirement. *State v. Seymour*, 5th Dist. Richland No. 03-CA-37, 2004-Ohio-3835, 2004 WL 1614891, ¶54, citing *United States v. Maxwell*, 160 F.3d 1071, 1075-76 (6th Cir. 1998); *United States v. Fletcher*, 965 F.2d 781, 782 (9th Cir. 1992); *Ford v. Seabold*, 841 F.2d 677, 681-82 (6th Cir. 1988), cert. denied, 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988).

**{¶42}** More importantly, Appellant has not produced any evidence of the systematic exclusion of African–Americans from the process used to draw jurors in Stark County.

**{¶43}** Finally, we note that Appellant's claim is based solely on alleged under-representation on *his* venire; however, underrepresentation on a single venire is not *systematic* exclusion. *State v. McNeill*, 83 Ohio St.3d 438, 444, 700 N.E.2d 596 (1998).

**{¶44}** Additionally, both Appellant and the victim in this case are African-American, and race was never raised or implied as an issue.

**{¶45}** Appellant has also failed to show a reasonable probability that the result of trial would have been different.

**{¶46}** For these reasons, Appellant's claims regarding the makeup of the venire on the basis of race lacks merit.

*Self-defense*

**{¶47}** Appellant argues that counsel was ineffective by failing to provide written notice of intent to present evidence of self-defense, pursuant to Crim.R. 12.2.

**{¶48}** Upon review, we find that while the trial court did cite the Crim.R. 12.2 requirement, it also found that Appellant had not presented sufficient evidence to support a self-defense instruction, namely that he failed to show that he had any reason to believe that he was in imminent danger of serious bodily harm or death or how his injuries were caused.

**{¶49}** We also find that Appellant herein was not entitled to a self-defense instruction. Appellant did not take the stand to assert self-defense or provide any evidence of self-defense at trial. While a defendant does not need to testify to be entitled to a self-

defense instruction, there must be evidence, however, to support the instruction. *State v. McDade,* 113 Ohio App. 397, 404, 178 N.E.2d 824 (1959) ("The evidence of self-defense may come wholly from the state....").

**{¶50}** Based on the testimony produced at trial, Appellant was not entitled to an instruction on self-defense because all of these elements were not presented. As the evidence does not support the instruction, defense counsel's failure to request such instruction does not fall below the standard of reasonableness. As such, Appellant is unable to satisfy the first prong of Strickland.

*Witness*

**{¶51}** Appellant argues that trial counsel should have asked questions of Appellant's mother on redirect with regard to the injuries she observed on Appellant's hands.

**{¶52}** Upon review, we find that since Mrs. McNair was not present at the scene, it is unlikely that she would have been able to explain how Appellant received his injuries or aid further in his claims of self-defense.

**{¶53}** Further, defense attorney's decision at trial regarding whether to conduct redirect examination of a witness, and the extent of the questioning, is a tactical choice. *See State v. Likosar*, 9th Dist. Medina No. 03CA0063-M, 2004-Ohio-114, 2004 WL 57467, ¶26; *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶123. Hence, whether further questioning of a witness would have unearthed any useful information is a matter for speculation only. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶125. Speculation is insufficient to establish the requisite prejudice in an ineffective assistance of counsel claim. *State v. Peterson*, 9th Dist. Summit

No. 23434, 2007-Ohio-2091, 2007 WL 1264202, ¶8. Further, vague speculation by an appellant as to what he would have said if called to testify, and how that would have affected the jury's verdict, is insufficient to establish ineffective assistance of counsel. *State v. Wiley*, 10th Dist. Franklin No. 03AP-340, 2004-Ohio-1008, 2004 WL 396767, ¶30, citing *State v. Bradley*, 42 Ohio St.3d 136, 146, 538 N.E.2d 373 (1989).

**{¶54}** Upon review of Appellant's arguments and the applicable law, we find he has not met the burden of demonstrating that his trial counsel was ineffective or that he was prejudiced by the alleged errors.

**{¶55}** Appellant's second assignment of error is denied.

### III.

**{¶56}** In his third assignment of error, Appellant argues the trial court erred in imposing the maximum sentence. We disagree.

**{¶57}** A court reviewing a criminal sentence is required by R.C. §2953.08(F) to review the entire trial court record, including any oral or written statements and presentence investigation reports. R.C. §2953.08(G)(2) provides this Court may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. §2929.13(B) or (D), §2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶28.

**{¶58}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in

the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶59}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. §2929.11, as well as the factors listed in R.C. §2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Morris*, 5th Dist. Ashland No. 20-COA-015, ¶90 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶36.

**{¶60}** The trial court must consider the purposes and factors contained in R.C. §2929.11 and §2929.12, but this Court has held that when the transcript of "the sentencing hearing is silent as to whether the trial court considered the factors in R.C. 2929.11 and 2929.12", a presumption arises "that a trial court considered the factors contained in R.C. 2929.12." *State v. Hannah*, 5th Dist. Richland No. 15-CA-1, 2015-Ohio-4438, ¶13. Accord *State v. Tenney*, 11th Dist. Ashtabula No. 2009-A-0015, 2010-Ohio-6248, 2010 WL 5289110, ¶14 and *State v. Crawford,* 5th Dist. Muskingum No. CT2021-0059, 2022-Ohio-3125, ¶18.

## ANALYSIS

**{¶61}** This Court may modify Appellant's sentence only if it "clearly and convincingly finds that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law."

**{¶62}** Appellant herein does not argue that R.C. §2929.13(B) or (D), §2929.14(B)(2)(e) or (C)(4), or §2929.20(I) apply, so we are restricted to consideration of whether the sentence is clearly and convincingly otherwise contrary to law.

**{¶63}** Initially, we note that the sentence imposed by the trial court is within the statutory guidelines, and Appellant does not assert a position to the contrary. Instead, Appellant contends that the trial court imposed a maximum sentence that fails to comply with the guidelines of R.C. §2929.11 or §2929.12 and that we should reverse the sentence on that basis.

**{¶64}** Appellant is requesting that we act in a manner that has been prohibited by the Supreme Court of Ohio in *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649 where the Court clearly stated that R.C. §2953.08(G)(2) does not permit "an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12."

**{¶65}** Appellant acknowledges that *Jones* is controlling and asks that we disregard it. However, we "are bound to follow the law and decisions of the Ohio Supreme Court, unless or until they are reversed or overruled. *State v. Lenior,* 5th Dist. Delaware No. 10CAA010011, 2010-Ohio-4910, 2010 WL 3921188; *Phillips v. Phillips,* 5th Dist., 2014-Ohio-5439, 25 N.E.3d 371." *Wendt v. Dickerson,* 5th Dist. No. 2017 AP 08 0024, 2018-Ohio-1034, 108 N.E.3d 1174, ¶30. We are therefore obligated to adhere to the decision in *Jones* and to reject Appellant's request.

**{¶66}** Appellant's third assignment of error is overruled.

**{¶67}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

King, J., concur.

JWW/kw 0111